2019 UT App 24

## THE UTAH COURT OF APPEALS

BOUNTIFUL CITY,
Appellee,
*v.*
NATHAN DAVID BAIZE,
Appellant.

Opinion
No. 20170155-CA
Filed February 14, 2019

Second District Court, Bountiful Department
The Honorable Glen R. Dawson
No. 161800370

Scott L. Wiggins, Attorney for Appellant

Jacob L. Fordham, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

MORTENSEN, Judge:

¶1 Utah's criminal law recognizes that a parent may discipline a child. Criminal sanctions may attach, however, when parental discipline exceeds the bounds of reasonableness or where serious physical injury results. After a bench trial, during which the court heard evidence that Nathan David Baize spanked his four-year-old son with enough force to leave a bruise in the shape of a handprint, the court found Baize guilty beyond a reasonable doubt of misdemeanor level child abuse. Baize appeals, claiming the court misconstrued the facts and misapplied the law. We affirm.

BACKGROUIND[1]

*The Incident of Abuse*

¶2      In late June 2016, Baize had his four-year-old son (Victim) for weekend parent-time. Baize and Victim's mother (Mother), are divorced and have joint custody of Victim. Victim spends every other weekend with Baize.

¶3      On the weekend in question, Victim had been acting up, and Baize and Mother exchanged emails about this behavior. Mother recalled that the emails described Victim as "yelling and screaming, washing out. He was saying terrible things, he was going to hurt people. He was mad. He wanted to go home. He was upset. Completely distraught."

¶4      Victim was "throwing temper tantrums, using foul language, [and] saying that he wanted [Baize] dead" on the day of the abuse. The bad behavior escalated during a car ride to a grocery store. Victim began kicking and punching his grandmother, who was with Baize and Victim. It took about an hour to calm down Victim enough to get him strapped in his car seat. Even then, Victim continued to jump up and down, "slamming his rear end on the bottom of the car seat."

¶5      Once they got home, Victim continued to fight with Baize. After trying various disciplinary interventions, Baize determined that his last resort was to spank Victim. Baize put Victim over his knee and warned him that he was going to be spanked unless he calmed down. When Victim continued to swear and tell Baize that he hated him, Baize spanked him one time. Baize gave Victim additional warnings, and then spanked him a second and third time.

---

1. On appeal, we construe the facts in the light most favorable to the verdict. *See State v. Miller*, 2017 UT App 171, ¶ 2 n.1, 405 P.3d 860.

¶6    Eventually, Baize called Mother and asked that she pick up Victim several hours earlier than the planned exchange. While changing Victim's clothes that evening, Mother noticed bruising on his bottom. When she asked Victim what had happened, he responded, "Don't talk to me about this," and requested that everyone leave his room. A few minutes later, Victim disclosed to Mother what had happened. Mother immediately called the Division of Child and Family Services (DCFS).

¶7    The next morning, Mother took photographs of the bruising on Victim's bottom, one of which was introduced as evidence. Mother testified that the photograph accurately depicted the injuries she saw on Victim: "I see fingerprints. I see, that are bruised, bruising, fingerprints. There are lines on his bottom, bruising. There [are] little spots on his bottom that are bruised." Mother stated that she "was pretty sick to [her] stomach" when she saw Victim's injuries.

¶8    An investigator from DCFS came by the day after the spanking and advised Mother to call the police about the incident. A detective (Detective) from the Bountiful City Police Department was assigned to the case. Detective arranged an interview for Victim at the Children's Justice Center (CJC Interview). After viewing the photographs and hearing Victim's CJC Interview, Detective determined that he needed to interview Baize.

¶9    Detective testified that the photograph introduced at trial depicted signs of redness consistent with diaper rash on Victim's bottom, but he also observed that it showed a yellowish bruise in the shape of "a finger or a handprint." Detective noted that there were no reports indicating that Victim needed medical attention for injuries related to the abuse. Detective also testified that Baize appeared to be in control of what he was doing when he spanked Victim.

¶10 Bountiful City (the City) charged Baize with child abuse in violation of Utah Code section 76-5-109(3)(c). Baize pled not guilty and requested a bench trial.

*The Proceedings*

¶11 The City argued that it is not "illegal or wrong" to discipline a child by spanking, but "when you spank a child to the point where there is physical injury is where you come to a Class C misdemeanor child abuse." The City said that Baize "should be aware that there may be bruising, that [he] may injure a child. [He is] putting [his] hands on a child. It's obvious to all of us that there's a risk that [he] may injure the child if [he] spank[s] the child too hard." The City further noted that it was not arguing that Baize "committed child abuse by spanking [Victim], once[,] twice[,] or three times. That's . . . within his realm as a parent to do. However, it's clear that he left an injury on the child. A handprint on the child's behind, buttocks is clearly caused only by spanking." The City concluded, "We are not here to stand up and tell the defendant how to parent his child or whether spanking is right or wrong. None of that is in play. It comes down to the fact that while disciplining his child [he] left a handprint on him, bruised him . . . . That's it."

¶12 Baize's trial counsel argued that spanking Victim "was not a gross deviation from the standard of care based on facts [and] specific evidence that [was introduced]. . . . [T]his spanking was not done out of anger. It was in a controlled manner. And it was as a result of trying to help the child calm down and get under control." Rather than admitting he struck Victim too hard, Baize's counsel argued that "[Baize] did not take an unjustifiable risk to cause bruising." Rather, "as a parent, the only way that he had left [to discipline] in his repertoire . . . [was] telling [Victim] what he was going to do and then stopping after he had done it to the point where he thought that was enough. That is not a gross deviation from the standard of care."

¶13  After hearing the evidence, including testimony from Mother and Detective, and after hearing the arguments, the court concluded:

> The statute involved as we all understand is [Utah Code section] 76-5-109. Any person who inflicts upon a child physical injury—I'm just reading the pertinent part—is guilty of an offense as follows. Part C, if done with criminal negligence the offense is a Class C misdemeanor. And, again, I previously read the definition of criminal negligence. I won't read that again. It is the lowest of the four mens rea standards that are recognized in Utah State law.
>
> I further note that physical injury is defined under [section] 76-5-109. And I'll just read a small part of that. "Physical injury means an injury to or a condition of the child which impairs the physical condition of the child, including, 1, a bruise or other contusion of the skin." There are other—there is a further definition of physical injury, but I'm just going to stop there for purposes of this case.

The court continued:

> [C]ertainly, a parent should be allowed to discipline his children in an appropriate way. But the level of contusion, the bruising on the buttocks of the child causes me to come to the conclusion that discipline was a gross deviation from the standard of care that an ordinary person would exercise. It was just too hard. It was too hard. And in light of that, I will enter a judgment for a conviction for the Class C misdemeanor, inflicting physical injury on a child with criminal negligence,

finding proof beyond a reasonable doubt based on the testimony of the two witnesses.

¶14    The judgment on the verdict was entered, and Baize was sentenced. Baize now appeals.


ISSUES AND STANDARDS OF REVIEW

¶15    Baize raises two issues on appeal. First, Baize claims that the district court misinterpreted and misapplied Utah Code section 76-5-109 by concluding that he committed child abuse. "The correct interpretation of a statute is a question of law and is reviewed for correctness." *State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993). Because it was not preserved at trial, Baize raises this issue pursuant to plain error. To establish the existence of plain error, Baize must show "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993).

¶16    Second, Baize claims that his trial counsel deprived him of effective assistance by failing to raise a defense of justification as provided in Utah Code section 76-2-401. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Beckering*, 2015 UT App 53, ¶ 18, 346 P.3d 672 (cleaned up).[2]

---

2. In a separate rule 23B motion filed simultaneously with his brief, Baize seeks remand to the district court to make findings and conclusions that his trial counsel was ineffective in failing to investigate and research the CJC Interview. "A remand under
(continued…)

ANALYSIS

I. Interpretation and Application of Utah Code Section 76-5-109

A.    The Statute's Plain Language

¶17    On appeal, Baize argues that the district court erred in interpreting and applying Utah Code section 76-5-109. Specifically, Baize asserts that "the court failed to read subsections (3) and (8) together as required by the language of the statute." Had the court properly considered the two subsections, Baize contends, it would have concluded his actions were justified and did not constitute child abuse.

¶18    "When interpreting statutes, we determine the statute's meaning by first looking to the statute's plain language, and give effect to the plain language unless the language is ambiguous." *State v. Schofield*, 2002 UT 132, ¶ 8, 63 P.3d 667 (cleaned up). In

_____

(…continued)
rule 23B will only be granted upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *State v. Lee*, 2014 UT App 4, ¶ 5, 318 P.3d 1164 (cleaned up). And to "prevail on grounds of ineffective assistance, a defendant must demonstrate, first, that counsel's performance was deficient, in that it fell below an objective standard of reasonable professional judgment, and second, that counsel's deficient performance was prejudicial—i.e., that it affected the outcome of the case." *State v. Hand*, 2016 UT App 26, ¶ 2, 367 P.3d 1052 (cleaned up). Nowhere in Baize's motion does he demonstrate nonspeculative facts that would support a determination that trial counsel was ineffective or any resulting prejudice. The motion and accompanying affidavit make conclusory allegations that the CJC Interview contained critical evidence, but nowhere does Baize identify that evidence. Thus, we decline to grant remand on Baize's separate rule 23B motion.

addition, "the plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *Id.* (cleaned up). Contrary to Baize's assertions, we conclude that the district court engaged in just such an integrated analysis in reaching its decision that Baize committed child abuse.

¶19    The portion of the statute Baize violated states that "[a]ny person who inflicts upon a child physical injury or, having the care or custody of such child, causes or permits another to inflict physical injury upon a child is guilty of an offense . . . if [the injury is] done with criminal negligence." Utah Code Ann. § 76-5-109(3)(c) (LexisNexis 2017).[3] "'Physical injury' means an injury to or condition of a child which impairs the physical condition of the child, including . . . a bruise or other contusion of the skin . . . ." *Id.* § 76-5-109(1)(e)(i).

¶20    Baize correctly asserts that Utah Code section 76-5-109(3) must be read in harmony with section 76-5-109(8), which states that "[a] person is not guilty of an offense under this section for conduct that constitutes: (a) reasonable discipline or management of a child, including withholding privileges; [or] (b) conduct described in Section 76-2-401." *Id.* § 76-5-109(8)(a)–(b). Utah Code section 76-2-401 states that a "defense of justification" for alleged child abuse may be claimed when "the actor's conduct is reasonable discipline of minors by parents, guardians, teachers, or other persons in loco parentis," unless such conduct results in serious bodily injury, serious physical injury, or the death of the minor. *Id.* § 76-2-401(1)(c); *see also id.* § 76-2-401(2). Thus, the statutes create a structure where a parent-defendant may be convicted of child abuse when he

---

3. Because the statutory provisions in effect at the relevant time do not differ in any material way from those now in effect, we cite the current version of the Utah Code.

causes physical injury to a child, including bruising, unless the conduct in question constituted reasonable discipline.[4]

¶21 Baize argues on appeal that the district court failed to undertake the "reasonable discipline" analysis required by Utah Code section 76-5-109(8)(a). Specifically Baize states, "There is nothing in the record demonstrating that the court read subsection (3) of section 76-5-109 together with subsection (8) as required by the plain language of the statute."

¶22 We acknowledge that the court did not explicitly invoke the numbers of the two subsections in interpreting and applying the statute. But it is nevertheless clear from the record that the court conducted such an analysis in applying the statute to Baize's conduct. The court stated:

> [A] *parent* should be allowed to discipline his children in an appropriate way. But the level of contusion, the bruising on the buttocks of the child causes me to come to the conclusion that *discipline was a gross deviation from the standard of care that an ordinary person would exercise*. It was just too hard. It was too hard.

(Emphasis added.) Accordingly, the court focused on the fact that Baize was Victim's parent, a status which is relevant under Utah Code section 76-5-109(8).

---

4. As the statute makes clear, the defense is available if the conduct is (1) reasonable and (2) results in only physical injury. Utah Code Ann. § 76-2-401 (LexisNexis 2017); *see also id.* § 76-5-109(1)(e) (defining physical injury). The defense is unavailable for reasonable discipline that results in serious bodily injury, serious physical injury, or the death of a minor. *See id.* § 76-2-401(2); *see also id.* § 76-1-601(11) (defining serious bodily injury); *id.* § 76-5-109(1)(f) (defining serious physical injury).

¶23   While the court never explicitly said Baize's spanking of Victim was "reasonable" or "unreasonable," it did say his conduct was "a gross deviation from the standard of care that an ordinary person would exercise." This is simply a variation in nomenclature describing the concept of reasonableness. If anything, the court's finding is more specific than simply saying the word "unreasonable." We therefore consider Baize's argument that the district court failed to read the two subsections together to be overly simplistic. Baize ignores that the district court did undertake such an analysis, albeit using different but equivalent language than that promoted by Baize. And because the district court analyzed Baize's conduct and determined that it was a "gross deviation" from the ordinary "standard of care," we conclude that the court considered the "reasonable discipline" analysis required by Utah Code section 76-5-109(8).

B.    Reasonable Discipline of a Child

¶24   Alternatively, Baize argues that "the court's determination that the spanking of [Victim] was unreasonable is contrary to common law principles that dictate punishment and chastisement are to be considered in light of the age, condition and disposition of the child, and other surrounding circumstances." Baize would have us understand that "discipline by a parent—under circumstances such as that in the instant case—is reasonable so long as the discipline is administered in a good faith manner that does not inflict serious physical injury on the child." In essence, Baize argues that parental discipline is reasonable provided that it (1) is done in good faith and (2) does not cause serious bodily injury.

¶25   We reject Baize's attempt to define reasonable parental discipline. First, nowhere do the statutes in question use the language, "administered in a good faith manner," as a standard for reasonableness. Baize has attempted to add a "good faith" prong to the reasonableness standard without directing us to supporting case law or other legal authority. Second, Utah Code

section 76-5-109 explicitly states that any person who inflicts "physical injury" on a child is guilty of an offense. Utah Code Ann. § 76-5-109(3) (LexisNexis 2017). In no way do any of the statutes in question suggest that parental discipline resulting in mere *physical injury* to a child is by definition reasonable, while only discipline resulting in *serious physical injury* is unreasonable. Rather, the statutes simply establish that the defense of justification is unavailable to a parent who causes serious physical injury in disciplining a child—not that inflicting something less than serious physical injury is always reasonable. *See id.* § 76-2-401(1)–(2). Thus, we decline to follow Baize's logic to the inevitable conclusion that a parent who physically injures his child while inflicting discipline in good faith must be acting reasonably.

¶26   Thus, we conclude that the district court did not plainly err in its interpretation and application of the relevant statutes.

## II. Ineffective Assistance of Counsel

¶27   Baize argues that his trial counsel deprived him of his right to effective assistance of counsel by failing to bring the justification defense identified in Utah Code section 76-2-401 to the district court's attention. The United States Supreme Court established a two prong test to determine if counsel's performance is deficient. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The test, as expressed by our supreme court, requires a defendant to "show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant." *Bundy v. Deland*, 763 P.2d 803, 805 (Utah 1988). But "[i]t is not necessary to address both parts of the test when the defendant makes an insufficient showing on one." *State v. Veale*, 2012 UT App 131, ¶ 5, 278 P.3d 153. Because we conclude that Baize has failed to show his counsel performed deficiently, we limit our analysis to the first prong.

¶28    Baize asserts that his counsel's ineffective assistance is demonstrated by the district court's failure "to read and analyze subsection (3) of section 76-5-109 together with subsection (8)." Baize argues that his counsel "failed to recognize the requirement of reading these provisions together." Yet Baize admits that his counsel's "arguments at closing . . . . were essentially consistent with the defense of justification."

¶29    Baize's ineffective assistance argument is without merit precisely because his trial counsel—as Baize admits—argued for a justification defense and the district court considered justification as provided for in Utah Code section 76-5-109(8). *See supra* ¶ 23. Trial counsel stated that Baize did not "take an unjustifiable risk to cause bruising . . . . [T]he only way that he had left [to discipline] in his repertoire . . . [was] telling [Victim] what he was going to do and then stopping after he had done it to the point where he thought that was enough. That is not a gross deviation from the standard of care." As with the analysis of the district court, trial counsel was under no obligation to refer to specific sections of the Utah Code in making the justification defense argument. It is evident from the record that Baize's trial counsel effectively communicated the existence of the justification defense without making explicit reference to the subsections of the statute. Thus, we conclude that Baize has failed to show ineffective assistance merely because his trial counsel did not explicitly and simultaneously invoke specific defenses available under Utah Code section 76-5-109(8).

CONCLUSION

¶30    Baize's argument that the district court misconstrued the facts and misapplied the law fails. On the record here we see no error in the district court's analysis, and we further conclude that Baize has failed to show deficient performance by his attorney.

¶31    Affirmed.

―――――――