**2021 UT 9**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BOUNTIFUL CITY,
*Respondent,*

*v.*

NATHAN DAVID BAIZE,
*Petitioner.*

No. 20190319
Heard September 11, 2020
Filed April 8, 2021

On Certiorari to the Utah Court of Appeals

Second District, Bountiful
The Honorable Glen R. Dawson
No. 161800370

Attorneys:

Yvette Donosso, Bountiful, for respondent

Scott L. Wiggins, Salt Lake City, for petitioner

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1    After hours of unsuccessful attempts to calm his four-year-old who was throwing a series of temper tantrums, Nathan Baize spanked his son three times. During the tantrums, Baize's son kicked Baize and hit him in the face. The child also kicked and punched his grandmother. Baize later told a police detective that he spanked his son as a "last resort." Evidence at trial showed that Baize struck his son with enough force to leave bruises in the shape of a handprint on the child's bottom that were visible two days later.

¶2    Bountiful City charged Baize with child abuse under Utah Code section 76-5-109(3)(c). That provision makes it a class C misdemeanor to "inflict[] upon a child physical injury" with "criminal negligence." The district court convicted Baize after a bench trial.

¶3    Baize appealed and argued before the court of appeals that the district court had misconstrued and misapplied the law. Specifically, Baize argued that the district court had failed to properly consider whether Baize's discipline could be considered "reasonable discipline" by a parent—conduct which is exempted from the statute's reach under certain circumstances. *Bountiful City v. Baize*, 2019 UT App 24, ¶¶ 17–21, 438 P.3d 1041; *see also* UTAH CODE § 76-5-109(8). Baize alternatively argued that his trial counsel rendered ineffective assistance of counsel by failing to raise the "reasonable discipline" defense. *Baize*, 2019 UT App 24, ¶ 16. The court of appeals rejected both of Baize's arguments and affirmed Baize's conviction. *Id.* ¶¶ 30–31.

¶4    Baize petitioned for certiorari. Before us, Baize contends the court of appeals erred by misconstruing and misapplying the law in a way that "essentially establishes a rule that any spanking by a parent that leaves a bruise" on the child constitutes "child abuse under the Statute."

¶5    We disagree with Baize about what the court of appeals held. The court of appeals correctly recognized that although a parent "may be convicted of child abuse when he causes physical injury to a child, including bruising," the statute also provides parents with a defense if the injury was not "serious" and "the conduct in question constituted reasonable discipline." *Baize,* 2019 UT App 24, ¶¶ 20–21; *see also* UTAH CODE § 76-5-109(3), (8); *id.* § 76-2-401.

¶6    Even though we endorse the court of appeals' construction of the statute, we conclude the court of appeals erred in determining it was "clear from the record" that the district court applied and correctly analyzed the statute's "reasonable discipline" provision. *Baize*, 2019 UT App 24, ¶¶ 22–23. We do not see the same clarity that the court of appeals did. We therefore vacate Baize's conviction and remand to the district court to enter findings about whether the discipline that Baize meted upon his son was "reasonable discipline."

## BACKGROUND

*Facts*[1]

¶7 Baize had his four-year-old son (Son) for weekend parent-time. *See Bountiful City v. Baize*, 2019 UT App 24, ¶ 2, 438 P.3d 1041. Son acted up and threw multiple temper tantrums. *Id.* ¶¶ 3–4. Son's mother (Mother) testified that Baize had emailed her and that the emails indicated Son had been "yelling and screaming." *See id.* ¶ 3. Son "was saying terrible things, he was going to hurt people. He was mad. He wanted to go home. He was upset. Completely distraught." *Id.* ¶ 3. A Bountiful City Police Department detective (Detective) similarly testified that, based on his interview with Baize, Son was "out of control," "throwing temper tantrums, using foul language, [and] saying that he wanted [Baize] dead. . . ."

¶8 One of Son's tantrums occurred in a grocery store parking lot. According to Detective, when Baize came out of the store, Baize found Son "kicking and punching his grandmother," who was with Son in a parked car. Son also repeatedly "jump[ed] up and down, 'slamming his rear end on the bottom of the car seat.'" *Id.* (quoting Detective). The tantrum continued for approximately an hour until Son calmed down enough that Baize could strap the child into his car seat. *Id.*

¶9 But the reprieve from Son's tantrums proved temporary. Once they returned home, Son resumed fighting with Baize. *Id.* ¶ 5. Baize told Detective that he tried various disciplinary interventions. This included talking to Son, putting him in a corner, and "everything but physical force." Finally, "the only thing . . . [Baize] thought would help would [be to] spank [Son]." Baize then put Son "over his knee and warned him that he was going to be spanked unless he calmed down." *Baize*, 2019 UT App 24, ¶ 5. Son "continued to swear and tell Baize that he hated him." *Id.* Baize then spanked Son on his bottom. Son continued his tantrum. Baize warned Son again. And then he spanked Son a second and third time. *Id.* Baize told Detective the spanking was a "last resort." *Id.*

---

[1] We recite a number of facts the court of appeals included in its opinion. *See Bountiful City v. Baize*, 2019 UT App 24, ¶¶ 3–9, 438 P.3d 1041. We also insert additional facts from the trial court record. We cite to the court of appeals' opinion when we borrow from it. Uncited references come from the trial court proceedings.

¶10 The morning after the incident, Baize called Mother and asked that she pick up Son hours earlier than planned. *Id.* ¶ 6. That evening, Mother noticed bruising on Son's bottom. *Id.* Son told Mother what had happened. *Id.* Mother then called the Division of Child and Family Services (DCFS). *Id.*

¶11 The following day (two days after the incident), a DCFS investigator came to see Mother and advised her to call the police. *Id.* ¶ 8. She did. That same day, Mother took photographs of the bruising. *Id.* ¶ 7.

¶12 Thereafter, Detective arranged for Son to be interviewed at the Children's Justice Center. *Id.* ¶ 8. After seeing Mother's photographs and hearing Son's interview, Detective interviewed Baize. *Id.*

*District Court Arguments and Conviction*

¶13 Bountiful City charged Baize with a class C criminal misdemeanor of child abuse under Utah Code section 76-5-109(3)(c)[2] for "inflict[ing] upon a child physical injury"[3] with "criminal

---

[2] We cite the current version of the statute, as there have been no substantive changes to the subsections pertinent to the allegations in this case since the incident occurred in 2016. Although portions of section 76-5-109 of the Utah Code were amended in 2017, those amendments affected only the definition of "*serious* physical injury," specifically relating to impediments to a child's breathing or blood circulation or unconsciousness. *See* H.B. 17, 2017 Utah Laws 2198–2220 (amending UTAH CODE § 76-5-109(1)(f)(ii)(I) and adding § 76-5-109(1)(f)(ii)(K)). The definitions of "physical injury," UTAH CODE § 76-5-109(1)(e), and the charged offense, *id.* § 76-5-109(3)(c), are the same in the current code as they were in 2016.

[3] The statute defines "physical injury" as:

an injury to or condition of a child which impairs the physical condition of the child, including: (i) a bruise or other contusion of the skin; (ii) a minor laceration or abrasion; (iii) failure to thrive or malnutrition; or (iv) any other condition which imperils the child's health or welfare and which is not a serious physical injury. . . .

*Id.* § 76-5-109(1)(e).

negligence."[4] *Id.* ¶ 10. Baize pled not guilty and requested a bench trial. *Id.*

¶14 Mother testified that she saw "bruising, fingerprints . . . lines on [Son's] bottom, bruising . . . [and] little spots on his bottom that are bruised." *Id.* ¶ 7. Mother's photograph of the bruising was introduced into evidence without objection. Mother testified that the images accurately portrayed Son's bruising. *Id.*

¶15 Detective similarly testified that the photograph depicted bruising in the shape of "a finger or a handprint," as well as other bruising and redness consistent with diaper rash. *Id.* ¶ 9. Detective presumed that Son "slamming his butt up and down into the car seat" was the cause of the additional bruising. Detective testified that he was unaware of any reports that Son required medical attention for the redness and bruising. *Baize*, 2019 UT App 24, ¶ 9. Mother confirmed that Son required no medical attention.

¶16 Baize's trial counsel argued that spanking Son "was not a gross deviation from the standard of care based on [the] facts [and] specific evidence that [was introduced]."[5] *Id.* ¶ 12 (second and third alteration in original). He also argued that Baize "did not take an unjustifiable risk to cause bruising." *Id.* Baize's counsel emphasized the circumstances leading up to the incident, including that Son "kicked and punched" his grandmother, caused bruising to himself by jumping up and down in his car seat, and engaged in "[t]hreatening behavior, hitting, yelling." The spanking, counsel explained, was the only tool Baize had left "as a parent" after exhausting other options. *Baize*, 2019 UT App 24, ¶ 12. Moreover, it was done in a "controlled manner," was "not done out of anger,"

---

[4] Under Utah Code section 76-2-103(4):

> A person engages in conduct . . . [w]ith criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

[5] Baize's trial counsel does not represent Baize on appeal.

was designed "to help the child calm down and get under control," and stopped when Baize "thought that was enough." *Id.*

¶17 Baize's trial counsel never expressly argued that Baize's spanking was "reasonable discipline." Nor did he expressly argue it fit into any other defense or justification in Utah Code section 76-5-109(8)[6] or 76-2-401.[7] Instead, Baize's trial counsel argued that the spanking, under the circumstances, "was not a gross deviation from the standard of care" and was not "an unjustifiable risk." *Baize*, 2019 UT App 24, ¶ 12.

¶18 The City acknowledged that it is not "illegal or wrong" for parents to discipline their children, including by spanking. *Id.* ¶ 11. Nevertheless, the City repeatedly pushed for a rule that "when you spank a child to the point where there is physical injury . . . you come to a Class C misdemeanor child abuse." *Id.* The law "clearly states," the City asserted, that it "is a violation when you leave physical injury [and] that's always going to be a gross deviation. Parents aren't supposed to leave physical injury on their children."

¶19 The City reasoned that "any parent," including Baize, "should be aware that there may be bruising, that they may injure a child. They are putting their hands on a child. It's obvious to all of us that there's a risk that they may injure the child if they spank the child too hard." The City explained that Baize could have remained within the confines of the law "[i]f he was being extra cautious" and "spanked him much more lightly to the point where there was no

---

[6] Utah Code section 76-5-109(8) provides:

> A person is not guilty of an offense under this section for conduct that constitutes: (a) reasonable discipline or management of a child, including withholding privileges; (b) conduct described in Section 76-2-401; or (c) the use of reasonable and necessary physical restraint or force on a child: (i) in self-defense; (ii) in defense of others; (iii) to protect the child; or (iv) to remove a weapon in the possession of a child. . . ."

[7] Utah Code section 76-2-401(1)(c) provides that the "defense of justification may be claimed . . . when the actor's conduct is reasonable discipline of minors by parents, guardians, teachers, or other persons in loco parentis. . . ." This defense is "not available if the offense charged involves causing . . . serious physical injury. . . ." UTAH CODE § 76-2-401(2).

bruising." The City concluded: "it's a matter of degree. And this is the lowest degree. It's just stepping over the line of the criminal code instead of parenting."

¶20 The City repeatedly argued that Son's "behavior really doesn't matter in the scheme of things." "It comes down to the fact that while disciplining his child [Baize] left a handprint on [Son], bruised him. . . . That's it." *Baize*, 2019 UT App 24, ¶ 11.

¶21 The district court began its analysis by reading aloud the definition of the relevant mens rea for the class C misdemeanor at issue—"criminal negligence." *See* UTAH CODE § 76-2-103(4). The court read: "[a] person engages in conduct with criminal negligence . . . when he ought to be aware of [a] substantial and unjustifiable risk that . . . the result would occur" and when that risk is of a "degree" that failure to perceive it "constitutes [a] gross deviation of the standard of care that an ordinary person would exercise in all of the circumstances," as viewed from the defendant's standpoint.

¶22 The district court again displayed its fixation with the mens rea when it interrupted the City's closing argument. The prosecutor had begun to say that, in this case, "the focus of course should be . . . ." The court interjected: "The mens rea." The City then added: "The mens rea and the injuries." Neither the court nor the City mentioned the reasonableness or unreasonableness of the parental discipline.

¶23 Following both parties' presentations and closing arguments, the district court clarified what it perceived to be the statutory provisions relevant to the crime charged:

> The statute involved as we all understand is [Utah Code section] 76-5-109. Any person who inflicts upon a child physical injury—*I'm just reading the pertinent part*—is guilty of an offense as follows. Part C, if done with criminal negligence the offense is a Class C misdemeanor. And again, I previously read the definition of criminal negligence. I won't read that again. It is the lowest of the four mens rea standards that are recognized in Utah State law.
>
> I further note that physical injury is defined under [section] 76-5-109. And I'll just read a small part of that. "Physical injury means an injury to or a condition of the child which impairs the physical condition of the child, including, 1, a bruise or other contusion of the skin." There are other—there is a further definition of

physical injury, but *I'm just going to stop there for purposes of this case.*

*Baize*, 2019 UT App 24, ¶ 13 (emphases added). The district court did not, in its narration of the "pertinent part[s]" of the statute, read from or cite any defense or justification in sections 76-5-109(8) or 76-2-401 of the Utah Code. Nor did it use the term "reasonable discipline" in its analysis. The court did acknowledge that "a parent should be allowed to discipline his children in an appropriate way." *Id.* ¶¶ 13, 22. But the court also clarified, "I think [the City] has it right. I think it's a matter of degree."

¶24 The court then found that "the level of contusion, the bruising on the buttocks of the child" indicated that the spanking "was just too hard," and therefore the "discipline was a gross deviation from the standard of care that an ordinary person would exercise." *Baize*, 2019 UT App 24, ¶ 13. Based on that finding and "based on the testimony of the two witnesses," the court concluded there was "proof beyond a reasonable doubt" for convicting Baize of a class C misdemeanor, for "inflicting physical injury on a child with criminal negligence." *Id.*

¶25 The district court sentenced Baize to ninety days in Davis County Jail plus a $750 fine but suspended both and ordered Baize to serve ten days in jail with twelve months' probation.

*The Court of Appeals Affirms*

¶26 With the assistance of new counsel, Baize appealed his conviction, raising two issues before the court of appeals. First, Baize argued that "his trial counsel deprived him of his right to effective assistance of counsel by failing to bring the [reasonable discipline] justification defense identified in Utah Code section 76-2-401." *Baize*, 2019 UT App 24, ¶ 27. Second, "Baize claim[ed] that the district court misinterpreted and misapplied Utah Code section 76-5-109," by either failing to analyze the "reasonable discipline" defense provided in subsection 8, *id.* ¶¶ 15, 21, or by conducting such an analysis without due consideration of certain common law factors Baize deemed necessary, including the "age, condition and disposition of the child" and the "good faith" of the parent. *Id.* ¶ 24. In his court of appeals briefs, Baize acknowledged that his statutory construction argument was raised for the first time on appeal, arguing that the court of appeals should nevertheless address it under the "plain error" exception to preservation rules.

¶27 The court of appeals rejected both of Baize's arguments and affirmed the district court's decision. *Id.* ¶¶ 29–30. Baize's ineffective

assistance of counsel argument failed because the court of appeals concluded that when Baize's trial counsel argued Baize's conduct was "not a gross deviation from the standard of care," the "counsel effectively communicated the existence of the justification defense without making explicit reference to the subsections of the statute." *Id.* ¶ 29. In other words, the court of appeals concluded that Baize's counsel had, in fact, raised the affirmative defense.

¶28 The court of appeals similarly concluded it was "clear" the district court analyzed whether Baize's discipline was the "reasonable discipline" a parent can apply without criminal penalty. *Id.* ¶¶ 22–23. The court of appeals pointed to the district court's conclusion that Baize's "discipline was a gross deviation from the standard of care," which came after the district court recognized that "[a] parent should be allowed to discipline his children in an appropriate way." *Id.* ¶ 22 (emphasis omitted) (quoting the district court). The court of appeals reasoned that "gross deviation from the standard of care" is "simply a variation in nomenclature describing the concept of reasonableness," and therefore it was unnecessary for the district court to "explicitly invoke the numbers" of the relevant statutory subsections or explicitly use the words "reasonable" or "unreasonable." *Id.* ¶¶ 22–23.

¶29 The court of appeals further concluded that the district court's analysis was adequate because nothing in the "reasonable discipline" statutes requires an examination of the common law factors Baize argued the district court had failed to consider. *Id.* ¶¶ 24–25. Finally, the court of appeals rejected Baize's argument that any "parental discipline resulting in mere *physical injury*," as opposed to *serious* physical injury, "is by definition reasonable" and thus exempted from the crime of child abuse. *Id.* ¶ 25. The court of appeals clarified that, although the reasonable discipline "defense is available if the conduct is (1) reasonable and (2) results in only [non-serious] physical injury," *id.* ¶ 20 n.4, "inflicting something less than serious physical injury" is neither "always reasonable" nor always unreasonable. *Id.* ¶ 25.

¶30 Baize petitioned for certiorari only on the question of "whether the court of appeals erred in its construction and application of Sections 76-5-109 and 76-2-401(1)(c) of the Utah Code." Baize did not seek review of the court of appeals' conclusion that his counsel did not render ineffective assistance.

## ISSUE AND STANDARD OF REVIEW

¶31 "On certiorari, we review the court of appeals' decision for correctness, focusing on whether that court correctly reviewed the

trial court's decision under the appropriate standard of review." *Cheek v. Iron Cnty. Att'y*, 2019 UT 50, ¶ 9, 448 P.3d 1236 (quoting *State v. Rushton*, 2017 UT 21, ¶ 9, 395 P.3d 92). The court of appeals reviewed Baize's statutory interpretation and application arguments under a "plain error" standard,[8] after finding Baize had not preserved the issue at trial. *Bountiful City v. Baize,* 2019 UT App 24, ¶ 15, 438 P.3d 1041.[9] "To demonstrate plain error, a defendant must establish that '(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful. . . .'" *State v. Johnson*, 2017 UT 76, ¶ 20, 416 P.3d 443 (alterations in original) (citation omitted).

---

[8] If a party "failed to preserve an issue in the trial court, but seeks to raise it on appeal . . . . the party must argue an exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 17, 416 P.3d 443. "Plain error" is one of the exceptions that allows an appellate court to review an argument that was unpreserved at trial. *See id.* ¶¶ 19–38 (detailing preservation exceptions).

[9] The court of appeals applied the plain error standard of review because Baize's brief to the court of appeals expressly stated that his statutory interpretation and application arguments were "raised for the first time on appeal by way of plain error." Baize then briefed why the district court had erred, and why that error was obvious and harmful.

Baize now appears to argue that he preserved his statutory interpretation and application arguments by raising them in his petition for a writ of certiorari, and/or by his presentation of the issue to the court of appeals. But the fact that Baize raised those arguments in the court of appeals and in his petition for certiorari means that he has *not waived* his right to petition this court to review the court of appeals' resolution of those issues. It would not cure Baize's initial failure to *preserve* those issues in the district court. *See Johnson*, 2017 UT 76, ¶¶ 14–17 (detailing a two-step inquiry into (1) whether parties sufficiently raised their issues and arguments at the trial court in order to *preserve* them for review by the court of appeals; and (2) whether the parties *waived* their issues or arguments by failing to raise them in the court of appeals or by failing to raise them in their opening briefs to this court).

## ANALYSIS

### I. THE STATUTORY FRAMEWORK

¶32 It is helpful to review the relevant statutory provisions before turning to the parties' arguments. The general rule under Utah Code section 76-5-109 (Child Abuse Statute or Statute) is that "[a]ny person who inflicts upon a child physical injury . . . is guilty" of a class A, B, or C misdemeanor, depending on the mens rea with which the defendant acted. UTAH CODE § 76-5-109(3). It is a class C misdemeanor if the offense is "done with criminal negligence." *Id.* § 76-5-109(3)(c).[10]

¶33 Utah Code section 76-5-109(1)(e) defines "physical injury" as "an injury to or condition of a child which impairs the physical condition of the child, including: (i) a bruise or other contusion of the skin; (ii) a minor laceration or abrasion; (iii) failure to thrive or malnutrition; or (iv) any other condition which imperils the child's health or welfare and which is not a serious physical injury. . . ."[11]

¶34 Utah Code section 76-2-103(4) provides that "[a] person engages in conduct . . . [w]ith criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint."

¶35 After describing the elements of the relevant offense in Subsection 3, the Child Abuse Statute then provides specific defenses in Subsection 8:

> A person is *not guilty of an offense* under this section for conduct that constitutes: (a) *reasonable discipline* or

---

[10] Utah Code subsection 76-5-109(3)(a) makes it a class A misdemeanor for "intentionally or knowingly" inflicting physical injury, while Utah Code subsection 76-5-109(3)(b) makes it a class B misdemeanor for "recklessly" doing so. Baize was charged only with a class C misdemeanor.

[11] "Serious physical injury" carries its own definition in Utah Code subsection 76-5-109(1)(f). No party here argues that "serious physical injury" is applicable to Baize's situation.

management of a child, including withholding privileges; (b) conduct described in Section 76-2-401; or (c) the use of reasonable and necessary physical restraint or force on a child: (i) in self-defense; (ii) in defense of others; (iii) to protect the child; or (iv) to remove a weapon in the possession of a child. . . ."

*Id.* § 76-5-109(8) (emphases added).[12]

¶36  Utah Code section 76-2-401(1)(c) similarly provides that the "*defense* of justification may be claimed . . . when the actor's conduct is *reasonable discipline* of minors by parents, guardians, teachers, or other persons in loco parentis. . . ." (Emphases added.) This defense is "not available if the offense charged involves causing . . . serious physical injury. . . ." *Id.* § 76-2-401(2).

¶37 The "reasonable discipline" provisions in sections 76-5-109(8) and 76-2-401(1)(c) are affirmative defenses, not elements of the offense,[13] and thus need only be addressed and negated by the prosecution *if* "the defendant has presented evidence of such

---

[12] Baize has only raised subsections (a) and (b) of section 76-5-109(8).

[13] Utah Code section 76-2-401(1)(c) expressly provides for the *defense* of justification, which *may be claimed*, meaning that it is not in play if unclaimed. And while Utah Code section 76-5-109(8) is not expressly listed as a defense, we have held that "exemptions from criminal statutes generally function as affirmative defenses." *State v. Bess*, 2019 UT 70, ¶¶ 30–31, 473 P.3d 157. The policy behind this general rule is that "the defendant is better positioned to know if any of the many possible exemptions even apply in his case," and construing exemptions as elements "would mean that the State would have to disprove every exception . . . whether relevant in a given case or not." *Id.* The statutory reasoning is that Utah Code section 76-1-501(2) defines "element of the offense" as "(a) the conduct, attendant circumstances, or results of conduct proscribed, prohibited, or forbidden in the definition of the offense; and (b) the culpable mental state required." *See Bess*, 2019 UT 70, ¶ 32. Here, "reasonable discipline" is not part of the conduct that is "proscribed, prohibited, or forbidden" in section 76-5-109 and thus is not an element of the offense. *See* UTAH CODE § 76-5-109; *cf. Bess*, 2019 UT 70, ¶ 32 (coming to the same conclusion on a different statute with a similar structure).

affirmative defense." *See id.* § 76-1-502(2)(b). But the fact that something is an affirmative defense and not an element of the crime "does not shift the burden of proof from the State to the defendant. Rather, it means that sufficient evidence must be presented at trial to put the affirmative defense at issue. At that point, the State must disprove the defense beyond a reasonable doubt." *State v. Bess*, 2019 UT 70, ¶ 34, 473 P.3d 157 (citations omitted).

## II. THE COURT OF APPEALS DID NOT ERR IN ITS CONSTRUCTION OF THE STATUTE

¶38   Baize first asserts that the court of appeals misconstrued the Child Abuse Statute. Baize argues that the court of appeals' construction "essentially establishes a rule that any spanking by a parent that leaves a bruise is guilty of child abuse. . . ." Baize contends that this is erroneous in two ways: (A) it runs counter to his interpretation of the plain language of the "reasonable discipline" provisions in subsections 76-5-109(8) and 76-2-401(1)(c) of the Utah Code; and (B) it "unduly abrogate[s]" a "number of factors," from common law and the Restatement (Second) of Torts, which Baize asserts must be considered.[14]

---

[14] Bountiful City argues that Baize waived his right to have this court review the question of whether a district court must consider certain common law factors because Baize did not raise arguments about some of those factors to the court of appeals, nor did he raise those arguments at the district court. Because we reject Baize's contention that the district court must review any set of common law factors, we need not sort out whether Baize's argument about additional factors would constitute "entirely new issues" or "entirely distinct legal theor[ies]" from the argument Baize made to the court of appeals that the district court needed to consider certain other common law factors. *See State v. Johnson*, 2017 UT 76, ¶ 14 n.2, 416 P.3d 443. We note, however, that although "we view issues narrowly" when examining whether an issue has been preserved or waived, we also "routinely consider new authority relevant to issues that have properly been" raised below. *Id.* (citations omitted) (internal quotation marks omitted) (emphases removed from original). In addition, when an issue of statutory interpretation was properly raised below, we will review a new argument that is "an integral extension of our interpretive task." *Bagley v. Bagley*, 2016 UT 48, ¶ 26, 387 P.3d 1000.

¶39 If Baize's description of the court of appeals' opinion were accurate, we might be partly inclined to agree with him on the first issue. But it is not. Baize mischaracterizes the court of appeals' holding. And he asks us for a sweeping interpretation of the "reasonable discipline" defense that runs afoul of the Statute's plain language. We therefore reject both of Baize's statutory interpretation arguments.

### A. *Baize Misinterprets the Statute and Mischaracterizes the Court of Appeals' Opinion*

¶40 Contrary to Baize's characterization, the court of appeals did not declare an unbending rule that anytime a parent spanks a child and leaves a bruise, that parent is guilty of child abuse. Rather, the court of appeals explained that a parent "may be convicted of child abuse when he causes physical injury to a child, including bruising, *unless the conduct in question constituted reasonable discipline*." *Bountiful City v. Baize*, 2019 UT App 24, ¶ 20, 438 P.3d 1041 (emphasis added) (footnote omitted). The court specifically recognized that the reasonable discipline "defense *is available* if the conduct is (1) reasonable and (2) results in only [non-serious] physical injury." *Id.* ¶ 20 n.4 (emphasis added). The court further clarified that "inflicting something less than serious physical injury" is neither "always reasonable" nor always unreasonable. *Id.* ¶ 25. This accords with our reading of the Statute.

¶41 Not only does Baize mischaracterize the court of appeals' opinion, he asks us to adopt his own interpretation of the "reasonable discipline" defense. Baize argues that any time a parent disciplines a child and causes only non-serious injury, rather than serious injury (as those terms are defined in the Statute), such discipline should be deemed reasonable and justified or permissible under the Statute. Baize made a similar argument at the court of appeals, which rejected it.[15] We disagree with Baize and agree with the court of appeals.

---

[15] Here, Baize argues that "[t]his defense applies so long as the offense did not cause 'serious bodily injury' or 'serious physical injury.'" He also argues that "Baize's conduct did not constitute offense" "because the City presented no evidence that the bruise . . . was serious or permanent. . . ." Baize's argument at the court of appeals was even more express. There, Baize argued that "*discipline by a parent*—under circumstances such as that in the instant case—*is reasonable* so long as the discipline is administered in a *good faith*

(continued . . .)

¶42 "When conducting statutory interpretation, we focus on the statute's plain language because it is the 'best evidence' of the legislature's intent." *State v. Flora*, 2020 UT 2, ¶ 21, 459 P.3d 975 (quoting *State v. Stewart*, 2018 UT 24, ¶ 12, 438 P.3d 515). We "presume that the legislature used each word advisedly," and that "the expression of one [term] should be interpreted as the exclusion of another," and we "give effect to every word of a statute, avoiding [a]ny interpretation which renders parts or words in a statute inoperative or superfluous." *Id.* (alteration in original) (citations omitted) (internal quotation marks omitted). We also "read the plain language of the statute as a whole[] and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *State v. Bess*, 2019 UT 70, ¶ 25, 473 P.3d 157 (alteration in original) (quoting *State v. Holm*, 2006 UT 31, ¶ 16, 137 P.3d 726).

¶43 Subsection 8 of Utah Code section 76-5-109 provides that a "person is not guilty of an offense under this section for conduct that constitutes: (a) *reasonable discipline* or management of a child . . .; [or] (b) conduct described in Section 76-2-401. . . ." (Emphasis added.) In turn, Utah Code section 76-2-401 provides that the "*defense* of justification may be claimed . . . when the actor's conduct is *reasonable discipline* of minors by parents, guardians, teachers, or other persons in loco parentis. . . ." UTAH CODE § 76-2-401(1)(c) (emphasis added). But, the statute continues, the reasonable discipline defense is "not available if the offense charged involves causing . . . serious physical injury. . . ." *Id.* § 76-2-401(2).

¶44 Baize's broad interpretation of the reasonable discipline defense appears to stem from section 76-2-401(2). Because this statute provides that the defense is "*not available* if the offense charged involves causing . . . serious physical injury," *id.* (emphasis added), Baize interprets that to mean the "defense *applies* so long as the offense did not cause 'serious bodily injury' or 'serious physical

manner that *does not inflict serious physical injury on the child*." *Baize,* 2019 UT App 24, ¶ 24 (emphasis added). In other words, he argued that parental discipline is per se reasonable if it "(1) is done in good faith and (2) does not cause *serious* bodily injury." *Id.* (emphasis added). The court of appeals understood Baize to be arguing that "parental discipline resulting in mere *physical injury* . . . is by definition reasonable" and thus exempted from the crime of child abuse. *Id.* ¶ 25. The court of appeals correctly rejected that interpretation. *See id.* ¶¶ 20 n.4, 25.

injury.'" In other words, Baize's reading would allow parents to physically injure their children during the course of discipline so long as the injury is not "serious," regardless of the reasonability of the parent's conduct. His reading would also absolve defendants from the responsibility of raising affirmative defenses and would instead require the prosecution to "disprove every exception . . . whether relevant in a given case or not." *Bess*, 2019 UT 70, ¶ 31. That is simply not what the Statute envisions.

¶45 Baize's interpretation conflates the term "applies" with the term "available," and renders the term "reasonable" superfluous or inoperative. Although we agree that section 76-2-401(2) implies the reasonable discipline defense is *available* to be raised if the discipline did not cause serious injury, this does not mean the defense *automatically applies* or exonerates the defendant. Even though a defendant need not "establish the justification or excuse by a preponderance of the evidence before he is entitled to avail himself of that defense," *State v. Dewey*, 41 Utah 538, 127 P. 275, 280 (1912), the existence of the defense does not translate to automatic applicability or exoneration. The defendant must still present "sufficient evidence . . . to put the affirmative defense at issue." *Bess*, 2019 UT 70, ¶ 34 (citation omitted).

¶46 That means that in the case of the Child Abuse Statute, the reasonable discipline defense is put "at issue" if the defendant presents sufficient evidence that the discipline was *both* "(1) reasonable and (2) result[ed] in only [non-serious] physical injury," as the court of appeals correctly explained. *Baize*, 2019 UT App 24, ¶ 20 n.4. Establishing one of those elements does not automatically establish the other, and the court of appeals correctly concluded that "inflicting something less than serious physical injury" is not "always reasonable," nor is it always unreasonable. *Id.* ¶ 25. Only after evidence is presented on both the reasonability of the discipline and the non-seriousness of the injury does the burden shift to the prosecution to disprove either prong of the defense beyond a reasonable doubt.[16]

---

[16] We clarify that even where a defendant has sufficiently raised these two prongs of the reasonable discipline defense, the defendant may still be convicted if the prosecution disproves either prong beyond a reasonable doubt.

¶47 In sum, we reject Baize's overbroad reading of the reasonable discipline defense and we reject his mischaracterization of the court of appeals' opinion.

### B. Common Law Factors Are Not Required in the Child Abuse Statute's Reasonable Discipline Defense

¶48 Baize also argues that the court of appeals erred because it failed to read into the Child Abuse Statute a series of common law factors he harvests from the Restatement (Second) of Torts. He presses us to do what the court of appeals did not; look beyond the plain language of the statute to find that "subsection (8) of the Statute requires consideration of . . . a number of factors, including the nature of the misbehavior, the child's age and size, and the nature and propriety of the force used. . . ."

¶49 Baize avers that "the court of appeals unduly abrogated the common law factors that are applicable in making a child abuse determination" when it failed to take these factors into consideration. Baize supports this proposition by reasoning that the "common law [is] the rule of decision in Utah courts," citing Utah Code section 68-3-1. Baize misemploys that statute.

¶50 While Utah Code section 68-3-1 adopts the "common law of England" as the "rule of decision in all courts of this state," it only does so "so far as it is not . . . in conflict with[] the . . . laws of this state, and so far only as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people hereof. . . ." Further, Utah Code section 68-3-1 is notably not in the Utah Criminal Code, which is housed in title 76. Baize ignores Utah Code section 76-1-105, which provides that "[c]ommon law crimes are abolished and no conduct is a crime unless made so by this code, other applicable statute or ordinance."

¶51 In other words, "Utah's criminal law is statutory." *State v. Miller,* 2008 UT 61, ¶ 16, 193 P.3d 92. This rule applies not only to the elements and mens rea of the crime charged, but also to the defenses available. *See State v. Gardiner*, 814 P.2d 568, 573–74 (Utah 1991). At most, Baize's citation to Utah Code section 68-3-1 invites us to examine whether the legislature's adoption of his "reasonable discipline" defense, as codified in Utah Code sections 76-2-401 and 76-5-109, leaves room for common law understandings of the contours of that defense. But, as we discuss below, none of the cases or restatements Baize cites convince us to adopt his theory that the statute contemplates a list of factors that the trier of fact must consider before it can decide whether a parent's discipline is reasonable or not.

¶52 Indeed, the cases and restatements Baize cites do not support his contention that Utah courts must consider a specific list of factors when analyzing a "reasonable discipline" defense to a criminal charge of child abuse. For example, Baize cites the 1977 U.S. Supreme Court case of *Ingraham v. Wright*, which examined whether corporal punishment in Florida schools was permissible under the Eighth and Fourteenth Amendments of the U.S. Constitution. 430 U.S. 651, 653 (1977). This in no way answers the question of when and how parental discipline of a child is permissible under Utah's criminal code.

¶53 Baize also cites a number of cases reviewing juvenile court decisions, which deal with different statutes and different standards of proof than those at issue here. *See, e.g.*, *State ex rel. L.P.*, 1999 UT App 157, ¶ 6, 981 P.2d 848 (overturning the juvenile court for applying the definition of child abuse found in the criminal code, rather than that in the Juvenile Court Act of 1996). One case Baize cites doesn't even examine the "reasonable discipline" provision[17] of the Juvenile Court Act. *See In re K.T.*, 2017 UT 44, ¶¶ 14, 11 n.4, 424 P.3d 91 (holding that it is not "abuse" *per se* to use an object to strike a child absent any evidence of "harm"; but *expressly* "not address[ing] any reasonable discipline exception," which the parties had not raised).

¶54 Another juvenile court case Baize cites examines "reasonable discipline," in the context of discipline by a *teacher* (not a parent) charged under the *Juvenile Court Act* (not the Child Abuse Statute). *K.Y. v. Div. of Child & Family Servs.*, 2010 UT App 335, 244 P.3d 399. But the issue there arose in the layered context of a provision of the public education code protecting teachers in a way that differs from the reasonable discipline provision of Utah Code section 76-5-109(8). *Compare* UTAH CODE § 76-5-109(8), *with K.Y.*, 2010 UT App 335, ¶ 23 (discussing UTAH CODE § 53A-11-804 (renumbered as § 53G-8-304)). Even if *K.Y.* were applicable to Baize's situation, it

---

[17] Multiple cases the City cites also fail to address the "reasonable discipline" provision under the Child Abuse Statute. *See West Valley City v. Norris*, 2001 UT App 279U, para. 1, 2001 WL 1135405; *Provo City v. Cannon*, 1999 UT App 344, ¶ 2, 994 P.2d 206. Nor do they address "reasonable discipline" under the Juvenile Court Act. *See K.A.M. v. State, Div. of Child & Family Servs.*, 2004 UT App 48U, 2004 WL 396421; *In re K.C.*, 2013 UT App 201, ¶ 18, 309 P.3d 255. We also do not find those cases helpful to our analysis either.

would only establish the unremarkable proposition that "the record must support a conclusion that [defendant's] actions fall within the statutory abuse definition. . . ." *K.Y.*, 2010 UT App 335, ¶ 23.

¶55 *K.Y.* does hold that when a court makes a reasonable discipline determination, then "[t]he issue of whether discipline was reasonable is a fact-dependent analysis that must take into account the various circumstances of the particular case." *Id.* ¶ 25.[18] True enough. But that holding does not support Baize's theory that courts must examine a specific list of factors in making reasonable discipline determinations. It simply establishes that the trier of fact must make a case-specific, circumstance-specific factual inquiry.

¶56 Baize's citations to *In re L.P.*, 1999 UT App 157, 981 P.2d 848, likewise do not prove his argument that the Child Abuse Statute requires a court to work from a specific list of common law factors to decide whether a parent reasonably disciplined their child. The court of appeals in *In re L.P.* advised that juvenile courts—in the process of determining whether the definition of "abused child" has been met under the Juvenile Court Act[19]—should make "detailed findings supporting [their] ultimate decision" and "[s]uch factual findings *may* include, *but are not limited to*" a long list of factors, one of which was "reasonable discipline." *Id.* ¶ 8 (emphases added).

¶57 Thus, *In re L.P.* does not support Baize's proposition for at least three reasons. First, *In re L.P.* did not list factors to be used in a *reasonable discipline* determination, but rather, it listed "reasonable discipline" as one factor for making an "*abused child*" determination. *Id.* (emphasis added). Second, the *L.P.* court expressly did *not*

---

[18] Although *K.Y.* supports this proposition by citing to *In re L.P.*, 1999 UT App 157, ¶¶ 8–9, 981 P.2d 848, explaining that *In re L.P.* "list[s] various factors that *may* indicate whether discipline was reasonable," *K.Y.*, UT App 335, ¶ 23, that does not indicate the *K.Y.* court thought such factors *must* be expressly considered as a matter of course in every case. Moreover, as we explain in the following paragraph, *K.Y.* mischaracterized *In re L.P.*, because *L.P.* in fact did not list factors for a reasonable discipline determination but rather listed possible factors for an abuse determination.

[19] The Juvenile Court Act of 1996 defines "abused child" as when a child has suffered "nonaccidental harm." *See In re L.P.*, 1999 UT App 157, ¶ 7 (citing UTAH CODE § 78-3a-103(1)(a)(i) (renumbered as § 78A-6-105)).

provide guidance for *criminal* statutes such as Utah Code section 76-5-109. *See id.* ¶ 6. Third, *In re L.P.* said the factors "*may* include," not *must* include, and it expressly said that "[n]one of the factors listed above is necessarily dispositive," and the factors should simply "*guide* the juvenile court as it exercises its *broad discretion* in making that determination." *Id.* ¶ 8 (emphases added); *see also In re K.T.*, 2017 UT 44, ¶ 12 (reiterating that *In re L.P.* simply "listed a number of factors that a juvenile court should consider before determining whether a child has been abused within the meaning of the [Juvenile Court Act]" and that "[n]one of the factors . . . is necessarily dispositive." (second alteration in original)).

¶58 In sum, Baize has cited nothing that controls our statutory analysis under the Child Abuse Statute. Nor has he cited any authority that supports his contention that Utah courts *must* consider certain factors in making a reasonable discipline determination. We nevertheless extract some useful guidance from some of those cases. First, we agree with *K.T.* that a trier of fact should "examine situations as a whole," and that no one factor is necessary or sufficient for such a determination. *See In re K.T.*, 2017 UT 44, ¶¶ 16, 12. That logic applies with equal force to reasonable discipline determinations under the Child Abuse Statute.

¶59 In addition, we agree with *K.Y.* that "[t]he issue of whether discipline was reasonable is a fact-dependent analysis that must take into account the various circumstances of the particular case." *See K.Y.*, 2010 UT App 335, ¶ 25. This accords with the ordinary meaning of "reasonable." *See Reasonable,* BLACK'S LAW DICTIONARY (11th ed. 2019) ("Fair, proper, or moderate under the circumstances. . . ."); *see also* STEPHEN MICHAEL SHEPPARD, *Reasonable (Reasonableness), in* THE WOLTERS KLUWER BOUVIER LAW DICTIONARY (Desk ed. 2012) ("A reasonable action is what most rational and fair-minded people could be expected to do in a given situation. Reasonableness differs from but is related to the idea of the right thing to do, or the moral duty to do what is right.").

¶60 We also borrow from *In re L.P.* to note that that "the relationship between the need and the amount [and type] of punishment administered," 1999 UT App 157, ¶ 8 (citation omitted), may be relevant to a court's determination of whether parental discipline was reasonable. Likewise, the child's age and size may also be relevant in some situations. But we reiterate that these factors may not necessarily be relevant in every case. As the court of appeals noted, district courts have "broad discretion" to determine the factors that are relevant in a particular case. *Id.*

¶61 Finally, and important to the discussion we undertake in the next section, we also agree with something else the court of appeals stated in *In re L.P.* There, the court of appeals observed that trial courts should make "detailed findings supporting [their] ultimate decision so that a body of case law can be developed," and so appellate courts can "review abuse determinations more effectively." *Id.* ¶¶ 8–9.

¶62 Simply stated, the court of appeals did not err when it rejected Baize's argument that the district court needed to examine a specific list of common law factors to decide whether Baize's discipline was reasonable. *Baize*, 2019 UT App 24, ¶¶ 24–25.

### III. THE COURT OF APPEALS ERRED IN CONCLUDING THAT THE DISTRICT COURT CORRECTLY APPLIED THE STATUTE

¶63 Baize next argues that the court of appeals erred in its *application* of the Child Abuse Statute. The district court, Baize argues, failed to engage in a "reasonable discipline" analysis separate from its examination of the Statute's mens rea requirement. According to Baize, the court of appeals mistook the district court's examination of the mens rea (criminal negligence) for a "reasonable discipline" analysis and therefore erroneously concluded that the district court sufficiently applied the two necessary tests. Baize alternatively argues that, if the district court did analyze the reasonable discipline defense, it did so incorrectly. We agree with Baize in part.

*A. Neither Party Has Petitioned for Review of the Court of Appeals' Determination that Baize's Trial Counsel Raised the Reasonable Discipline Defense*

¶64 Before turning to the court of appeals' determination that the district court actually and sufficiently undertook a "reasonable discipline" analysis, we first explain why we will operate from the assumption that the prosecution and district court had an obligation to address the defense.

¶65 We reiterate that the "reasonable discipline" provisions in sections 76-5-109(8) and 76-2-401(1)(c) of the Utah Code are affirmative defenses, not elements of the offense, and thus need only be addressed and negated by the prosecution *if* "the defendant has presented evidence of such affirmative defense." *See* UTAH CODE § 76-1-502(2)(b); *see also supra* ¶¶ 37, 46. The prosecution must disprove the defense beyond a reasonable doubt only *after* "sufficient evidence [has been] presented at trial to put the affirmative defense

at issue." *State v. Bess*, 2019 UT 70, ¶ 34, 473 P.3d 157 (citation omitted); *see also State v. Drej*, 2010 UT 35, ¶ 15, 233 P.3d 476 ("The Utah rule requires that the prosecution 'disprove the existence of affirmative defenses beyond a reasonable doubt *once the defendant has produced some evidence of the defense*.'" (emphasis added) (citation omitted)). This assumes importance here because it was incumbent upon Baize to raise the affirmative defense at trial in order to trigger the prosecution's and district court's obligation to address that defense.

¶66 In the court of appeals, Baize argued that he had been denied effective assistance of counsel because his trial attorney did not raise the defense.[20] Before us, the City pounces on Baize's argument before the court of appeals that his counsel rendered ineffective assistance of counsel. And the City argues that "it is undisputed Baize did not raise [the] defense during the trial." Based on this, the City posits that we need not address Baize's argument that the district court misapplied the defense.

¶67 But the City's contentions on this point ignore the court of appeals' conclusion that Baize's trial counsel sufficiently raised and "effectively communicated the existence of the [reasonable discipline] justification defense. . . ." *Bountiful City v. Baize*, 2019 UT App 24, ¶ 29, 438 P.3d 1041. The court of appeals' conclusion echoes through our opinion because if Baize's counsel raised the defense, then the prosecution had an obligation to respond to and disprove the defense, and the district court had an obligation to address it and make findings. *See supra* ¶¶ 37, 46.

¶68 Baize's petition for certiorari does not ask us to review this part of the court of appeals' decision, nor has the City cross-petitioned us to review it. Instead, Baize implies, and the City effectively concedes, that Baize's counsel raised the defense and, therefore, the district court needed to engage in such an analysis. Baize argued to us that "these affirmative defenses were squarely before the court by virtue of its 'reasonable discipline analysis'" and therefore "the City bore the burden of disproving at least one

---

[20] In his briefing to the court of appeals, Baize conceded that his trial counsel's "arguments at closing. . . . were essentially consistent with the defense of justification." *Bountiful City v. Baize*, 2017 UT App 25, ¶ 28, 438 P.3d 1041. This permitted the court of appeals to reject the ineffective assistance of counsel argument.

element of these defenses. . . ." And, by implication, Baize assumes the district court would then also need to address those defenses.

¶69 The City, on the other hand, initially rebuts Baize's assertions by contending "Baize never raised these defenses during trial" and, therefore, the City did not "bear[] the burden of disproving the elements of the defenses. . . ." But the City goes on to concede that "the record contains testimony and colloquy by the City *and Baize's counsel* regarding both the 'justification' and 'reasonable discipline defense.'" (Emphasis added.) The City further contends, "[b]oth the trial and appellate courts had access to testimony about the victim's poor behavior. . . . In fact the Court of Appeals cited exculpatory facts regarding both 'reasonable discipline' and justification in its opinion." This causes the City to argue that "the Court of Appeals had a 'complete picture' when it rendered its analysis and *this issue is moot*." (Emphasis added.) In other words, the City argues that *Baize's trial counsel*, the City's trial counsel, and the district court all addressed the issues of "reasonable discipline" and "justification," so the question of whether Baize's counsel put the reasonable discipline defense at play is irrelevant or moot. The parties' disagreement before us, therefore, hinges on whether the district court actually and/or correctly undertook a reasonable discipline analysis.

¶70 The adversarial nature of our judicial system is based "on the premise that parties are in the best position to select and argue the issues most advantageous to themselves. . . ." *State v. Johnson*, 2017 UT 76, ¶ 8, 416 P.3d 443. "[P]arties have the duty to identify [the] legal issues and bring [the] arguments" they are pursuing. *Id.* ¶ 14. "If the parties fail to raise an issue in either the trial or appellate court, they risk losing the opportunity to have the court address that issue." *Id.* (footnote omitted).

¶71 In light of this posture, we proceed from the presumption that the district court needed to conduct a reasonable discipline analysis because: (1) the court of appeals determined that Baize's trial counsel effectively raised the "reasonable discipline" affirmative defense; (2) neither of the parties challenged the court of appeals' holding in that respect; (3) neither party directly argues that the district court did not need to perform a reasonable discipline analysis; and (4) the City's assertion that Baize's trial counsel engaged in a "colloquy" and "testimony" "regarding both 'justification' and 'reasonable discipline'" effectively constitutes a concession that Baize's trial counsel did raise the defense. We therefore refrain from revisiting whether Baize preserved the

defense and whether the court of appeals' determination binds us to the conclusion that Baize raised the defense in the district court.

¶72   In other words, because of the way the parties have approached this case, the question before us is not whether the district court needed to perform a "reasonable discipline" analysis, but rather whether the court of appeals was correct in holding that the district court's reasoning amounted to a "reasonable discipline" analysis at all.

*B. The Court of Appeals Erred in Concluding That the District Court Clearly Applied the Statute Correctly*

¶73   We disagree with the court of appeals' conclusion that it is "clear from the record" that the district court actually and correctly conducted a "reasonable discipline" analysis. *See Baize*, 2019 UT App 24, ¶¶ 22–23. We find the record far less clear than the court of appeals did.

¶74   The court of appeals based its conclusion on this portion of the district court's analysis:

> [A] *parent* should be allowed to discipline his children in an appropriate way. But the level of contusion, the bruising on the buttocks of the child causes me to come to the conclusion that [the] *discipline was a gross deviation from the standard of care that an ordinary person would exercise*. It was just too hard.

*See id.* ¶ 22 (quoting the district court) (emphases added by the court of appeals). The court of appeals reasoned that "gross deviation from the standard of care" is "simply a variation in nomenclature describing the concept of reasonableness. If anything, the court's finding is more specific than simply saying the word 'unreasonable.'" *Id.* ¶ 23. We are far less certain than the court of appeals that the district court had the reasonable discipline defense in mind when it engaged in that analysis.

¶75   The court of appeals appears to have discounted that "gross deviation from the standard of care" is specifically the language of the relevant mens rea—criminal negligence—which appears in section 76-2-103(4) of the Utah Code. The district court read this statute aloud earlier in the proceeding, "to make sure we are all on the same page." Further, the district court expressly emphasized its focus on the mens rea when it interrupted the closing argument of the City, who had begun to say that, in this case, "the focus of course should be. . . ." The court interjected: "The mens rea." In contrast, the district court did not read from or cite any defense or justification in

section 76-5-109(8) or 76-2-401 of the Utah Code. Nor did it use the term "reasonable discipline" in its deliberations.

¶76 There may be some merit to the court of appeals' observation that the district court acknowledged that "a parent should be allowed to discipline his children in an appropriate way," and "the fact that Baize was [Son's] parent . . . is relevant under Utah Code section 76-5-109(8)." *Baize*, 2019 UT App 24, ¶ 22 (emphasis omitted).[21] It may also be consequential that the district court was concerned not just with any amount of contusion or bruising, but specifically "*the level* of contusion, the bruising," and that it "was just too hard." *Id.* (emphasis added).

¶77 But when we look beyond the snippets of the district court's decision that the court of appeals discussed and examine them in the context of the whole record, we have serious doubts that the district court was undertaking an analysis of whether Baize's conduct constituted permissible "reasonable discipline." Instead, it appears that the district court was focused on whether Baize's behavior met the criminal negligence standard of mens rea. And while we recognize the possibility that a reasonable discipline determination may be supported by the same facts as a criminal negligence determination, we cannot allow one conclusion to wholly and implicitly serve double-duty for the other. The Statute includes two separate provisions for criminal negligence as the mens rea of the crime and for reasonable discipline as an affirmative defense. Because it's unclear from the record whether the district court's analysis was anything other than an analysis of criminal negligence, and because a district court's criminal negligence finding cannot implicitly serve as a "reasonable discipline" finding, we cannot let the court of appeals' decision stand.

¶78 Even if the district court did have the reasonable discipline defense in mind, the record indicates that the district court may have considered certain relevant circumstances to be irrelevant. As this case will return to the district court on remand, we take the occasion to clarify this potential misapplication of the Statute. Specifically, we are troubled that the district court said, "I think [the City] has it right," after the City had repeatedly argued for application of

---

[21] We clarify that Utah Code section 76-5-109(8) applies to any "person," but section 76-2-401(1)(c), which is incorporated by reference in 76-5-109(8), applies to "parents, guardians, teachers, or other persons in loco parentis. . . ."

something akin to a per se rule and encouraged the district court to disregard potentially relevant considerations that could have spoken to the reasonableness of Baize's discipline. Specifically, the City repeatedly argued that Son's "behavior really doesn't matter in the scheme of things." The City further asserted that "[i]t comes down to the fact that while disciplining his child [Baize] left a handprint on [Son], bruised him. . . . That's it." *Baize*, 2019 UT App 24, ¶ 11 (third alteration in original).

¶79 As we have already discussed, *that's not it*. When the defendant has presented sufficient evidence to put the affirmative defense of "reasonable discipline" at issue, then the prosecution must also disprove that defense beyond a reasonable doubt. *See supra* ¶ 37. Further, although the Statute does not require an examination of the specific common law factors that Baize argues a district court must consider, the Statute does require an examination of all relevant circumstances, as we discussed above. *See supra* ¶¶ 58–62. And, moreover, a court is obligated to enter findings sufficient to allow a reviewing court to examine the thinking behind its determination that the discipline was reasonable or not. We do not have that type of record before us.

¶80 Because of the district court's comments appearing to approve of the City's incorrect interpretation of the Statute's requirements, we are unsure whether the court correctly analyzed the reasonable discipline defense. In other words, to the extent the district court considered whether Baize's discipline was reasonable, we have no visibility into what facts the district court might have considered to make that determination. Without that detail, we cannot meaningfully review the district court's decision. Thus, we order remand to permit the district court to clarify its ruling.

## CONCLUSION

¶81 Although we hold that the court of appeals was largely correct in its construction of the Child Abuse Statute, we nevertheless hold that the court erred when it concluded that it was "clear" the district court correctly applied the Statute's "reasonable discipline" defense. On the findings in front of us, we are unable to ascertain whether the district court addressed the defense and, if it did, what was the basis for a determination that Baize's discipline was not reasonable. We therefore vacate Baize's conviction and remand to the district court to squarely address Baize's reasonable discipline defense. The district court may, if it deems helpful, permit further evidence and argument on that question, and conduct any other proceedings necessary to address the "reasonable discipline"

defense that Utah Code sections 76-5-109(8) and 76-2-401(1)(c) provide. But the court must enter findings and conclusions on the question of "reasonable discipline" sufficient to permit meaningful appellate review.

_____