**2021 UT App 135**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BERNARDO ANTONIO GONZALEZ,
Appellant.

Opinion
No. 20190901-CA
Filed December 9, 2021

Third District Court, Salt Lake Department
The Honorable Linda M. Jones
No. 191901679

Emily Adams, Freyja Johnson, and Cherise M.
Bacalski, Attorneys for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1      Following Bernardo Antonio Gonzalez's conviction for
domestic violence criminal trespass, Nina[1] obtained a protective
order against him. So when she saw Gonzalez following her home
from work and when he ultimately spoke with her not far from
her home, she reported it to police. The State then charged
Gonzalez with violating the protective order. At trial, Gonzalez's
counsel (Counsel) successfully obtained a ruling from the court
preventing the admission of any evidence regarding the earlier
domestic violence charge, but Counsel then stipulated to the entry

_____

1. A pseudonym.

of an exhibit referencing that conviction. Gonzalez now appeals, arguing that Counsel rendered ineffective assistance in failing to properly redact the exhibit and thereby allowing the jury to learn about the earlier conviction. We affirm.

BACKGROUND[2]

¶2     At the sentencing hearing for Gonzalez's conviction for domestic violence criminal trespass, the district court in that case imposed a five-year protective order that prohibited Gonzalez from contacting, harassing, or otherwise communicating either directly or indirectly with Nina or her daughter. In no uncertain terms the court instructed, "You are to have no contact with [Nina]. That means no [indirect] or direct contact. You may not use social media to contact her. You may not call her. You may not text her." And regarding Nina's daughter the court instructed, "[Y]ou are to have no direct or indirect contact with her. That means no contact through [social media], no telephoning. If you see her on the street, you turn and walk the other way." The court emphasized to Gonzalez, "That will be very important, very important that you follow those . . . protective orders."

¶3     But only a month and a half later, as Nina waited for a bus after work, she saw Gonzalez parked at her bus stop. Then, once seated on the bus, Nina "got scared" and called her daughter to tell her that she had seen Gonzalez. At her second bus stop, Nina saw Gonzalez again, and Nina's daughter, having stayed on the phone with her mother, called the police. In an attempt to prevent Gonzalez from discovering where she lived, Nina got off the bus at a different stop from usual, but when she saw Gonzalez driving

---

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *Layton City v. Carr*, 2014 UT App 227, ¶ 2 n.2, 336 P.3d 587 (cleaned up).

down the street toward her residence, she diverted to a nearby church. Although she waited at the church for forty-five minutes, when she finally walked home, Gonzalez was parked only 240 feet away from her residence. Gonzalez then spoke to Nina from his vehicle. "[I]n shock," Nina could not even remember what Gonzalez said, and when she "got scared and yelled out his name," Gonzalez quickly drove away. Nina then called 911 herself, but by the time police arrived Gonzalez was nowhere to be found.

¶4     The State located and arrested Gonzalez, charging him with violation of a protective order, and before trial, Gonzalez asked the court to exclude any evidence regarding the earlier domestic violence conviction. The trial court granted the motion. But despite this, Counsel stipulated to the admission of an exhibit that contained the transcript from the sentencing hearing at which the protective order was issued. And, although heavily redacted, the transcript contained many extant references to "sentencing," including:

> So we're serving sentencing protective orders on you. They are part of the sentence in the original case, the case that—why you are here today. So the sentencing protective order requires that you have no contact either direct or indirect, with the individuals listed on those sentencing protective orders. . . . This is typical in a domestic violence case as part of the sentencing.

¶5     In the end, despite Gonzalez's testimony that he never intended to violate the protective order, that his proximity to Nina's residence was inadvertent, and that he was in the area only "looking for an apartment," the jury found Gonzalez guilty. Gonzalez appeals.

ISSUE AND STANDARD OF REVIEW

¶6　Gonzalez contends only that Counsel rendered constitutionally ineffective assistance in stipulating to the entry of the sentencing hearing transcript without ensuring that the references to his earlier conviction had been redacted. Specifically, Gonzalez asserts that Counsel rendered ineffective assistance in failing to redact three phrases found in a single paragraph of the transcript: (1) "part of the sentence in the original case, the case that—why you are here today," (2) "sentencing protective order," and (3) "[t]his is typical in a domestic violence case as part of the sentencing."[3] "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Beckering*, 2015 UT App 53, ¶ 18, 346 P.3d 672 (cleaned up).

ANALYSIS

¶7　To prevail on an ineffective assistance of counsel claim, Gonzalez must establish both that Counsel's "performance was deficient in that it fell below an objective standard of reasonableness and [that] . . . the deficient performance prejudiced the defense." *See State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350 (cleaned up). However, "[b]ecause failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [Gonzalez's] claims under either prong." *See Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182. And "[i]f it is easier to dispose of an ineffectiveness claim on the ground of

---

3. Although Gonzalez's brief contends that Counsel rendered ineffective assistance in stipulating to the entry of the sentencing hearing transcript without ensuring that "all references" to his earlier conviction had been redacted, his brief focuses on only the three phrases recited above and we limit our focus accordingly.

lack of sufficient prejudice . . . that course should be followed." *Strickland v. Washington*, 466 U.S. 668, 697 (1984). In this case, we assume without deciding that Counsel rendered deficient performance by failing to fully ensure the transcript was appropriately redacted, but Gonzalez's ineffective assistance of counsel claim still fails because he cannot show that he was prejudiced by Counsel's performance.

¶8      To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. That is, the defendant's showing must "undermine [our] confidence in the outcome." *Id.* And while we acknowledge that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support," *id.* at 696, the impact of the alleged error must, nevertheless, "be a demonstrable reality," *see State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082 (cleaned up). Here, Gonzalez has not shown that his proposed redactions, even if they had been made to the transcript, would have changed the evidentiary picture to the point that the outcome would have differed.

¶9      First, while Gonzalez initially argues that "[t]rial counsel performed deficiently when he did not ensure that the transcript . . . was fully redacted to exclude any reference to [Gonzalez's] domestic violence case," the remainder of his argument narrows to only one paragraph in the transcript and focuses on only three specific phrases: (1) "part of the sentence in the original case, the case that—why you are here today," (2) "sentencing protective order," and (3) "[t]his is typical in a domestic violence case as part of the sentencing." From "reading the transcript," he asserts, "the jury knew that [he] had been convicted in a domestic violence case, and as a result of that conviction, the court had issued a protective order against him in favor of [Nina]." However, our review of the record shows that the transcript contained many

more references to "sentencing" than the three phrases with which Gonzalez takes issue. Indeed, apart from the phrases Gonzalez contests, our review discovered language such as "State versus Bernard Gonzalez," "sentencing protective order(s)" (numerous times), "you will need to follow the sentencing protective orders" (multiple times), and "[t]hat will be very important, very important that you follow those sentencing protective orders." Yet, in his brief, Gonzalez takes no issue with these other numerous references to sentencing or any other language that could have clued the jury into the fact that he had previously faced criminal charges that led to the protective order in the first place. Thus, even if the phrases Gonzalez alleges Counsel should have redacted were actually redacted, many other statements remained that indicated that the protective order resulted from a sentencing hearing in a criminal case.

¶10 Second, even without the transcript, the jury participated in a trial in which Gonzalez was charged with violating a protective order. That fact alone would have led the jury to reasonably infer that a court of law found it necessary to enter an order prohibiting any contact between Gonzalez and Nina or her daughter based on a history of some kind of substantial conflict between Gonzalez and Nina. *See State v. Aziakanou*, 2021 UT 57, ¶ 65 ("A jury may rely on all reasonable inferences that can be drawn from the evidence at trial." (cleaned up)); *cf. State v. Ashcraft*, 2015 UT 5, ¶ 37, 349 P.3d 664 (confirming that the jury may use "common-sense" and make "reasonable inferences").

¶11 And third, although Gonzalez also argues that his trial became a "credibility contest," he does little to connect this assertion to the language he disputes. Gonzalez does state that "the jury's assessment of [his] credibility was harmed when it improperly learned that [he] had a prior domestic violence conviction involving [Nina]" and that based on the domestic violence conviction, "the jury could have inferred that . . . there was a greater likelihood that he acted poorly against [Nina] again

by intentionally or knowingly violating the protective order." Based on this he concludes that "the jury's assessment of [his] credibility declined." While we appreciate that the jury's knowledge of a defendant's history of domestic violence can undermine the defendant's credibility, *see State v. Labrum*, 2014 UT App 5, ¶ 36, 318 P.3d 1151, Gonzalez has not explained and we do not see how the statements with which Gonzalez takes issue would have undermined his credibility any more than the inferences the jurors likely made (or at least could have reasonably made) by virtue of the fact that they participated in a trial for violation of a protective order. Accordingly, we reject this argument.

¶12 In sum, the totality of the circumstances before us do not persuade us that the missed redactions Gonzalez identifies prejudiced him such that there is a reasonable probability that the outcome of his case would have differed. As a result, Gonzalez does not meet his burden to show ineffective assistance of counsel.

## CONCLUSION

¶13 Having fallen short in showing that Counsel's alleged deficient performance prejudiced his case, Gonzalez has not established ineffective assistance of counsel. Accordingly, we affirm.

_____