**2026 UT App 74**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PHILIP CHRISTOPHER PARAMOURE,
Appellant.

Opinion
No. 20240381-CA
Filed May 7, 2026

Third District Court, Salt Lake Department
The Honorable Paul B. Parker
No. 221903231

Freyja Johnson, Emily Adams, and
Jessica Hyde Holzer, Attorneys for Appellant

Simarjit S. Gill and Brandon E. Simmons,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

ORME, Judge:

¶1 The State charged Philip Christopher Paramoure with child abuse. At trial, Paramoure argued that his actions were justified as reasonable discipline of his son. The jury disagreed and convicted him. On appeal, Paramoure challenges the trial court's initial and supplemental jury instructions regarding the affirmative defense of reasonable discipline. Because we agree that the supplemental instruction misstated the law, we reverse his conviction.

BACKGROUND[1]

¶2  One night in February 2022, Paramoure arranged to pick up his fourteen-year-old son (Son) for a weekend visit, but Son messaged Paramoure asking if he could go to Paramoure's house the next morning instead. Son told Paramoure that one of his friends was "talking about hurting himself" and that Son "might need to go over there." Paramoure was concerned because another of Son's friends had committed suicide a few months prior. So Paramoure asked Son for the friend's name and address. Son accused Paramoure of "blowing it way out of proportion." Son said that he just wanted "to be there for" his friend.

¶3  Paramoure continued to argue with Son via text message, eventually saying, "I hope you're not bullshitting me on this." Son replied, "Jesus you are so messed up in the head." Paramoure again asked Son for his friend's address, and Son replied, "Are you serious, fuck off I'm going to [my friend's house]." Paramoure said, "I'm going to kick your ass when I see you" and "I have f***** had it with you."[2] Paramoure then told Son he would come pick him up soon.

¶4  When Paramoure arrived outside the house where Son lived with his mother (Mother) and her boyfriend, he texted Son, "Let's go." Son came outside and found Paramoure leaning against his car with his arms crossed. Paramoure asked Son "if

---

1. "On appeal, we review the facts in a light most favorable to the jury's verdict and recite the facts accordingly," presenting "conflicting evidence only as necessary to understand issues raised on appeal." *State v. Macbeth*, 2026 UT App 3, n.1, 583 P.3d 1147 (quotation simplified). We employ this standard even when we conclude the jury was given an erroneous instruction. *See id.* ¶ 2.

2. These text messages are quoted verbatim.

[he] wanted to go," which Son took as asking whether he "wanted to fight." Paramoure pushed Son, who ran back toward the front porch of the house while telling Paramoure to "F off." Paramoure followed Son to the porch and "pulled" Son down by the shoulders, getting on top of him and pinning him to the ground.

¶5      Hearing Son's voice, Mother unlocked the front door and saw Paramoure pull Son down, get on top of him, and hit him. She called the police, and her boyfriend pulled Son inside the house. Paramoure returned to his car.

¶6      An officer (Officer) arrived at the house soon after and spoke with Paramoure in the driveway. Paramoure told Officer that he had "slapped" and "hit his kid a couple of times" to "deal[] with him" because "he needed to be disciplined." Officer observed a cut above Son's eye but reported no "redness, no bruising, no marks of any kind," although Son and Mother later reported that a scab from a prior injury to his hand had reopened and there was swelling around his eye as well as bruising and scrapes on his back. Officer issued a citation to Paramoure, and he was later charged with one count of child abuse.

¶7      At trial, Son, Mother, Mother's boyfriend, and Officer testified for the State. Paramoure testified in his own defense. He admitted to pushing and slapping Son and pinning him down. But he testified that he "was trying to defuse the situation" and "calm [Son] down."

¶8      After Paramoure's testimony, counsel and the court discussed the jury instructions, specifically the instruction regarding Paramoure's affirmative defense of reasonable discipline. The State—believing that the case did not involve "serious bodily injury"—raised concerns that the proposed instruction nevertheless "talk[ed] a lot about serious bodily

injury." Paramoure's counsel (Counsel)[3] urged the court to include a discussion of serious bodily injury, arguing that the jury should be informed that force may be considered reasonable even if it results in injury. The State reiterated that the discussion of serious bodily injury should be removed, arguing "it incorrectly implies" that discipline is always reasonable "unless there is serious bodily injury." But Counsel reiterated that the instruction should include a sentence stating that the presence of physical injury does not, by itself, render force unreasonable. The court stated that Counsel's suggestion would go "too far" and would be "commenting on the evidence." The court then removed all language regarding any physical injury—serious or otherwise—from the instruction on the defense of reasonable discipline.

¶9    The court then instructed the jury that to find Paramoure guilty of child abuse, it would have to find beyond a reasonable doubt "[t]hat the defense of reasonable discipline does not apply." A separate instruction explained:

> Conduct which is justified is a defense to prosecution for any offense based on the conduct. For child abuse, this defense may be claimed when the actor's conduct is reasonable discipline of minors by parents, guardians, teachers, or other persons in loco parentis.
>
> Under the defense of Reasonable Discipline, an actor is not guilty of Child Abuse for conduct that constitutes reasonable discipline or management of a child, including withholding privileges.
>
> The jury must consider all of the facts and circumstances presented at trial, in determining

---

3. Paramoure was represented at trial by two attorneys. For ease, we refer to them collectively as "Counsel."

whether the defense of Reasonable Discipline applies.

You must decide whether the defense of Reasonable Discipline applies in this case. If you determine that Mr. Paramoure's actions amounted to reasonable discipline, as defined in these instructions, his actions are "justified" and therefore, not unlawful. If the acts were justified, he is entitled to a finding of not guilty.

Another instruction defined "Reasonable" as "fair, proper, or moderate under the circumstances" and "Reasonableness" as "an objective standard, determined by the jury, not a subjective standard determined by any person involved."

¶10 During deliberation, the jury submitted a question to the court:

Judge,

We feel we are close, but some hangups on definition of reasonable.

Is there any guidance (additional) you can provide for reasonable discipline?

The court informed both parties of the jury's question and provided a proposed answer, which read:

The issue of what is reasonable discipline is considered from the viewpoint of an objectively reasonable person. In other words, would an objectively reasonable person, considering all the facts and circumstances that the Defendant was confronted with, use the force the Defendant did to discipline his child.

The court stated, "What I worry about here is that what [the jury is] struggling with is how to apply the test. And I think what is basic law is that you ask yourself what a reasonable objective person would do through the eyes of the defendant."

¶11 The State noted that "one potential negative" with the proposed answer was that "the instruction as worded could imply that there was one correct thing to do, did the defendant do the one thing that a reasonable person would have done, where . . . a reasonable person could have . . . done multiple different things." The parties then conferred on the court's proposed answer, and when they returned, Counsel stated that "the problem with the second sentence is that there's a lot of reasonable people who wouldn't use any force" and that the instruction as worded by the court would result in "burden shifting" and "the false presumption that any reasonable person would use some force." Counsel emphasized that the instruction should direct the jury to focus on "what a reasonable person would think because there's a lot of reasonable people that wouldn't use any force at all."

¶12 When the court stated it would submit its answer as written, Counsel again argued, "Our objection to that is that it's burden shifting, because . . . within the umbrella of reasonable person, there isn't one right thing. And this is making it like a reasonable person either would have or wouldn't have done that." The court acknowledged that this was a "fair point" and stated that it would "add a statement on the bottom . . . that the burden to show that this was [not] objectively reasonable remains with the State."

¶13 The court then submitted a supplemental instruction to the jury which stated,

> The issue of what is reasonable discipline is considered from the viewpoint of an objectively reasonable person. In other words, would an

objectively reasonable person, considering all the facts and circumstances that the Defendant was confronted with, use the force the Defendant did to discipline his child.

The burden to prove that the defense of reasonable discipline does not apply is on the prosecution. If the prosecution fails to convince you that the defense of reasonable discipline does not apply you must find the Defendant not guilty.

So instructed, the jury found Paramoure guilty.[4]

ISSUE AND STANDARD OF REVIEW

¶14   On appeal, Paramoure argues that both the trial court's initial and supplemental instructions failed to properly instruct the jury on the affirmative defense of reasonable discipline. "We review challenges to jury instructions under a correctness standard." *Meeks v. Peng*, 2024 UT 5, ¶ 33, 545 P.3d 226 (quotation simplified).[5] "When reviewing jury instructions, we must consider the challenged instruction in context." *Id.* (quotation simplified). "And we will affirm when the instructions taken as a

---

4. Paramoure was charged with class A misdemeanor child abuse for "intentionally or knowingly" inflicting physical injury on a child. *See* Utah Code Ann. § 76-5-109(3)(a) (LexisNexis 2022). But he was convicted of a class B misdemeanor for "recklessly" inflicting physical injury on a child. *See id.* § 76-5-109(3)(b).

5. As long as "the jury instructions are legally correct, the precise wording and specificity . . . is left to the sound discretion of the trial court." *State v. Hunt*, 2025 UT 54, ¶ 45, 582 P.3d 772 (quotation simplified).

whole fairly instruct the jury on the law applicable to the case."
*Id.* (quotation simplified).[6]

ANALYSIS

¶15    Paramoure was convicted of child abuse under then-Utah
Code section 76-5-109(3)(b). *See* Utah Code Ann. § 76-5-109(3)(b)
(LexisNexis 2022). At trial, he raised the affirmative defense of
reasonable discipline under then-section 76-5-109(8)(a), which
provided that "[a] person is not guilty" of child abuse "for
conduct that constitutes . . . reasonable discipline or management
of a child." *Id.* § 76-5-109(8)(a). This required the State to "disprove
that defense beyond a reasonable doubt." *Bountiful City v. Baize*,
2021 UT 9, ¶ 79, 487 P.3d 71 (quotation simplified). And it entitled
Paramoure to a reasonable discipline jury instruction. *See State v.
Devan*, 2024 UT App 193, ¶ 54, 562 P.3d 1233, *cert. denied*, 568 P.3d
261 (Utah 2025).

¶16    The trial court instructed the jury on reasonable discipline
in both the initial and supplemental instructions. Paramoure takes
issue with both. First, he argues that the initial instruction
misstated the law and that the court should have given his
requested reasonable-discipline instruction instead. He argues
that under our Supreme Court's decision in *Baize*, the initial
reasonable-discipline instruction should have clarified that "the
presence of a non-serious injury does not prevent a jury from
concluding that a parent engaged in reasonable discipline."

¶17    *Baize* "obviously did not involve the contours of a defense
in context of jury instructions," *State v. Cover*, 2025 UT App 34,

_____

6. Paramoure also argues that Counsel provided constitutionally
ineffective assistance in failing to object to statements the
prosecutor made about reasonable discipline during the State's
closing argument. Because we reverse based on the jury
instructions, we need not address this issue.

¶ 31, 566 P.3d 788 (quotation simplified), because that case involved an appeal from a bench trial, *see Baize*, 2021 UT 9, ¶ 2. Nor did *Baize* "purport to establish a rigid . . . test that trial courts must always incorporate into jury instructions." *Cover*, 2025 UT App 34, ¶ 31. But in *Baize*, our Supreme Court agreed with this court's prior conclusion that "inflicting something less than serious physical injury is not always reasonable, nor is it always unreasonable." 2021 UT 9, ¶ 46 (quotation simplified).

¶18   While "parties are entitled to have the jury instructed accurately on the law" but "are not entitled to have the jury instructed with any particular wording," *State v. Hunt*, 2025 UT 54, ¶ 45, 582 P.3d 772 (quotation simplified), we take Paramoure's point that an accurate statement of the law regarding reasonable discipline, at least in this case, may well have required an instruction clarifying that the mere presence of injury does not necessarily mean that the force used in inflicting it was unreasonable. We do not decide this definitively, though, because what we view as the bigger problem here is the court's supplemental jury instruction.

¶19   After the jury expressed, during its deliberations, its "hangup" with the concept of reasonable discipline, the court further instructed, with our emphasis,

> The issue of what is reasonable discipline is considered from the viewpoint of an objectively reasonable person. In other words, *would an objectively reasonable person, considering all the facts and circumstances that the Defendant was confronted with, use the force the Defendant did to discipline his child.*
>
> The burden to prove that the defense of reasonable discipline does not apply is on the prosecution. If the prosecution fails to convince you that the

> defense of reasonable discipline does not apply you
> must find the Defendant not guilty.

¶20　Paramoure argues that the emphasized portion of this instruction improperly lowered the State's burden to disprove his reasonable-discipline defense. In Paramoure's view, "the question is not whether an objectively reasonable person '*would* . . . use the force [he] did to discipline his child'—the correct question is if the State met its burden of proving that *no objectively reasonable* person would use the force [he] did to discipline Son under the circumstances." Paramoure stresses that a reasonable person could have taken any number of disciplinary actions—using force or not—but that this portion of the instruction implied that the affirmative defense of reasonable discipline applied only if a reasonable person would have used the very force he did under the circumstances. We agree that this instruction lowered the State's burden to disprove Paramoure's reasonable-discipline defense.

¶21　"Because the burden of proof for an affirmative defense is counterintuitive, instructions on affirmative defenses must clearly communicate to the jury what the burden of proof is and who carries the burden." *State v. Lee*, 2014 UT App 4, ¶ 27, 318 P.3d 1164 (quotation simplified). The instruction here asked the jury to determine whether a reasonable person would use the same force that Paramoure had used in disciplining Son. But the proper inquiry was whether no reasonable person would have used that level of force. So while the second paragraph of the supplemental instruction explicitly allocated the burden to the State, the first paragraph effectively lowered it.

¶22　But even "if a jury instruction is erroneous, we will reverse only if the defendant shows a reasonable probability the error affected the outcome of his case." *State v. O'Bannon*, 2012 UT App 71, ¶ 15, 274 P.3d 992 (quotation simplified). *See State v. Hawkins*, 2016 UT App 9, ¶ 52, 366 P.3d 884 ("To reverse a trial verdict, we

must find not a mere possibility, but a reasonable likelihood that the error affected the result.") (quotation simplified), *cert. denied*, 379 P.3d 1181 (Utah 2016). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Wyatt v. State*, 2021 UT 32, ¶ 34, 493 P.3d 621 (quotation simplified). *See O'Bannon*, 2012 UT App 71, ¶ 41 ("An error is prejudicial if it tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law.") (quotation simplified).

¶23   Given its question to the trial court during its deliberations, the jury was clearly focused on the reasonable discipline defense. And the jury was clearly confused about how to evaluate reasonable discipline. We are therefore convinced that had the supplemental instruction properly framed the question for the jury by requiring it to find that no reasonable person would have used the force Paramoure used in disciplining Son, there is a reasonable probability that Paramoure would have been acquitted.

¶24   Thus, we conclude that the supplemental jury instruction misstated the law in lowering the State's burden to disprove the reasonable-discipline affirmative defense, thereby prejudicing Paramoure's defense.

CONCLUSION

¶25   The trial court's supplemental jury instruction misstated the law regarding reasonable discipline, effectively lowering the State's burden of disproving Paramoure's reasonable-discipline affirmative defense. Because we conclude that the erroneous instruction harmed Paramoure, we reverse his conviction and remand the matter for a new trial.